UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COMPUWARE CORPORATION,
a Michigan Corporation,

        Plaintiff/
        Counterclaim Defendant,

v.

OPNET TECHNOLOGIES, INC.,
a Delaware Corporation,

        Defendant/
        Counterclaim Plaintiff.
_____/

Case No.  04-73749

District Judge Anna Diggs Taylor

Magistrate Judge R. Steven Whalen

**OPINION AND ORDER GRANTING
MOTION TO COMPEL PRODUCTION BY A DATE CERTAIN [Docket #39]**

Before the Court is Plaintiff's motion, filed July 13, 2005, to compel Defendant to produce documents "as soon as possible by a date certain," and for sanctions [Docket #39]. For the reason set forth below, Plaintiff's motion to compel is GRANTED, but the request for sanctions is DENIED.

**I.   PRODUCTION OF DOCUMENTS**

On January 31, 2005, Plaintiff served Defendant with its first set of production requests. Plaintiff acknowledges that Defendant agreed to produce most of the documents and things requested, but disputes the manner of production, indicating that Opnet's

-1-

production of documents on a "rolling basis" and refusal to set a date for the completion of production frustrates Plaintiff's preparation of its case.

After receiving various portions of the requested documents, presented incrementally throughout April and May of 2005, Plaintiff requested on June 10, 2005 that Defendant provide it with a date certain for completion of document production by June 19, 2005, indicating that it would seek the Court's intervention if Defendant did not provide a date certain by that time. Defendant had not set a date for the completion of production by the time this motion was filed on July 13, 2005. In the course of a September 8, 2005 telephone conference, counsel for Defendant stated that "[i]t is my hope that we will have [document production] completed by the end of next week, September 16, and that is my target date. It is possible that will slip beyond that, but we would expect if there is some additional production that occurs beyond that it is not likely to be much." *Joint List of Unresolved Issues,* Exhibit 18 at 4, Dep. pg. 33. Defendant's counsel reiterated that "we believe that we'll be in a position to complete our document production for documents responsive to all of Compuware's requests by the end of next week." *Id*. at 33-34.

Contrary to the above representation, Defendant's counsel produced approximately 120,000 additional documents in three installments made on September 21, 23, 27, 2005. *Id.* Exhibit 20 at 1-3. Defendant's counsel accompanied the September 27th installment with a letter stating that "[w]ith this installment, we have completed OPNET's production of documents that we have located by means of a reasonably diligent search and which are responsive to Compuware's document requests. If, however, we locate additional

responsive, non-privileged documents, we will produce them." *Id.*, Exhibit 20 at 3. Notwithstanding this statement, Defendant spread the production of over 80,000 additional documents between the dates of October 10, 11, and 24, as well as November 2, and 9, *Id.*, Exhibit 21. As ordered by the Honorable Anna Diggs Taylor, November 9, 2005 also represents the last day of discovery [Docket #18].

Opnet defends its method of producing documents and its unwillingness to produce a date certain by pointing out that it has produced nearly 400,000 documents, while Plaintiff has produced only 21,000. Defendant adds that on the last day of discovery, this Court ordered Plaintiff to produce numerous documents that it previously refused to produce. *Joint List of Unresolved Issues* at 4. However, as discussed by Plaintiff, differences in the volume of material produced by each litigant does not in and of itself suggest impropriety by the party submitting fewer documents. Plaintiff submits that volume discrepancies are "attributable to the facts and circumstances of the case," noting that its requests necessarily involved the "technical, commercial, and financial aspects" of the allegedly infringing products, whereas Defendant's requests "were narrow in scope and directed principally to the patents at issue and the inventions claimed in those patents." *Id.* At 2. I agree. Moreover, assuming, *arguendo*, that Plaintiff is flouting the rules of discovery, this hardly serves as a reason to permit Defendant to act likewise.

Defendant's stated reasons for failing to comply with its promises to complete the production of documents by September 16, and then by September 27, 2005 are similarly suspect. Defendant states that a portion of the late submitted documents included those given

in response to a demand made by Plaintiff on September 21, 2005. However, Plaintiff disputes the claim that it first demanded this information in September, 2005, stating instead that although Defendant had agreed to a broad category of production several months earlier, it had produced only a portion of these documents within "a narrow time period," obliging Plaintiff to demand previously requested material.[1]  *Id*. at 2, footnote 4.  Defendant further claims that following its September assurances that all pertinent documents had been produced, it discovered the existence of additional documents which had escaped earlier notice due to the fact that they were password protected.  Defendant alleges that upon discovering these documents, its counsel ordered all of the protected documents to an outside vendor, then "searched, retrieved, and reviewed for privilege and responsiveness," before being produced "as quickly as possible."  *Id.* at 5.[2]

As a general principle, the rules of discovery require a "reasonably diligent search"

---

[1]Defendant argues that it "clearly and repeatedly" told Compuware it would not produce information other than that related to version 10.5 of its software and that the January requests expressly were limited to the "current version." *Joint List of Unresolved Issues* at 5. On November 18, 2005, Defendant submitted a number of exhibits [Docket #117], as evidence of its longstanding refusal to submit more than the "current version" of the software in question. *Id.*, Exhibit B. at 1, Exhibit C. at 3-4, Exhibit D at 4, Exhibit E at 4, and Exhibit F at 4-5.

Assuming that at an earlier point in discovery  Defendant withheld material on its good faith belief that it was outside the scope of the discovery requests, Plaintiff's "demand" for further documentation on September 21, 2005 could not have surprised Defendant, since as correspondence from Plaintiff's counsel notes, the Court issued a written order on August 23, 2005 compelling the production of those documents within 30 days. *Id*. at Exhibit G. This request, characterized as a "demand" by Defendant, asked for  documents already compelled by the Court a month earlier.

[2] Defendant does not explain why it did not anticipate earlier that a substantial portion of the discoverable material would be password  protected.

and no more. However, the material produced since September 16, 2005 (the date upon which Defendant's counsel stated that all production should be completed) does not appear to represent an isolated and reasonably overlooked class of documents, but rather, an attempt to thwart the production of legitimately discoverable materials until the very end of the discovery period. Defendant produced over 200,000 documents between September 21, and November 9, 2005, representing at least half of its total production so far. [3] *Id*. at 4. When one considers not just the volume of the late-submitted material, but its proportion to Defendant's total output, Defendant's assertion that although it was "reasonably diligent" rings hollow. Further, despite the delay in production, Defendant has allegedly informed Plaintiff that it expected to produce "at least 20,000 additional unidentified documents" but declined to provide a date certain for their production. *Id*. at 3. Plaintiff has established its need for the prompt submission of any undisclosed discoverable material and a date certain for the completion of Defendant's obligations in this matter, and therefore the motion to compel will be granted.

## II. SANCTIONS

Fed. R. Civ. P. 37(b)(**2**) states in pertinent part that "if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> **(A)** An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action

---

[3] Opnet production documents 179806-387349.

> in accordance with the claim of the party obtaining the order;
>
> **(B)** An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;
>
> **(C)** An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

Pursuant to Rule 37(b)(2), the sanction imposed is vested in the court's discretion. The "federal courts have well-acknowledged inherent power to levy sanctions in response to abusive litigation practices," *DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 135 (2nd Cir. 1998) (internal citations omitted).

At the August 16, 2005 hearing, at which sanctions were issued against Defendant, the Court informed counsel that the non-prevailing party in any future discovery motion should prepare for the imposition of sanctions. Although Defendant has demonstrated sanctionable behavior, I decline to impose sanctions at this time, noting that Defendant responded to this motion on August 1, 2005 [Docket #46], two weeks before the Court issued its warning. However, the Court reiterates that future discovery abuses or failure to comply with this Court's orders by either party will be subject to sanctions, including the most drastic remedies contemplated by 37(b)(2).

### III.   CONCLUSION

For these reasons, IT IS ORDERED that:

1. Plaintiff's Motion to Compel Production by a Date Certain is GRANTED. Defendant shall complete production of all requested and discoverable material relevant to this motion within twenty-one days of this Order.

2. Upon completion of the production referenced above, Defendant's counsel shall prepare and submit to the Court an affidavit stating that all relevant production of documents pursuant to this motion has been furnished to Plaintiff.

3. Plaintiff's request for sanctions is DENIED. However, **DEFENDANT'S FAILURE TO COMPLY WITH THIS ORDER MAY RESULT IN SANCTIONS UNDER FED.R.CIV.P. 37 (b)(2), INCLUDING ENTRY OF DEFAULT JUDGMENT AND SANCTIONS FOR CONTEMPT OF COURT.**

                         S/R. Steven Whalen
                         R. STEVEN WHALEN
                         UNITED STATES MAGISTRATE JUDGE

Dated: November 30, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on

November 30, 2005.

                                      <u>S/Gina Wilson</u>
                                      Judicial Assistant